SANTA et al., Appellants,

v.

OHIO DEPARTMENT OF HUMAN SERVICES, Appellee.

[Cite as *Santa v. Ohio Dept. of Human Serv.* (2000), 136 Ohio App.3d 190.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 74690.

Decided Jan. 31, 2000.

*Walter P. Bubna,* for appellants.

*Betty D. Montgomery,* Attorney General, *John T. Williams,* Assistant Attorney General, for appellee.

JAMES D. SWEENEY, Judge.

Plaintiffs-appellants Elsie Santa (d.o.b. March 31, 1907; d.o.d. November 23, 1996) and Frank Santa, Jr., appeal from the defendant-appellee Ohio Department of Human Services ("ODHS") denial of Medicaid benefits to Elsie in this appeal made pursuant to R.C. 119. For the reasons adduced below, we reverse and enter judgment in favor of defendant-appellee.

A review of the record on appeal indicates that Elsie Santa resided with her husband, Frank Santa, Sr., in their home located at 4331 West 156th Street, Cleveland, Ohio, since 1962. In 1984, the husband died, and Elsie then resided in the home alone. Elsie's son, Frank Santa, Jr., who resided at another location with his own wife in Parma, Ohio, dutifully assisted his ailing mother in her declining years of health.

Frank, Jr. claimed that Elsie transferred her interest in her home to him (and his wife) on December 2, 1991, by way of a survivorship deed that was prepared by the parties to the deed without benefit of legal counsel. Frank, Jr. claimed that this transfer was a gift in recognition of his caring of, and service to, his mother. This deed was recorded approximately four years later on January 31, 1995, at which time the conveyance fee of $186.00 reflected a property valuation

of $46,500.[1] The record also contains a durable power of attorney, executed on December 2, 1991, by Elsie in favor of Frank Santa, Jr. This power was witnessed by Maryann Santa (the wife of Frank Santa, Jr.) and Leona Cudo (the mother of Maryann Santa). The signature of Elsie (who had been blind for several decades) was notarized by Notary Public Marilyn Mozina.

In February 1992, health problems forced Elsie to leave her home and enter the care of a long-term-care facility as a private-pay patient. On April 30, 1993, Elsie's private pay status ceased. Elsie made application to receive Medicaid benefits in September 1994. Elsie received Medicaid coverage from September 1 to December 31, 1994, when Medicaid benefits were terminated.

On January 31, 1995, in addition to having recorded the deed for the house from Elsie to her son (and his wife), Frank Jr. also recorded a warranty deed that transferred his (and his wife's) interest in Elsie's home to his mother-in-law, Leona Cudo.[2] On the basis of the conveyance fee information, this warranty deed to Leona Cudo valued the transfer of the property at $46,500 (approximately $4,800 less than the 1994 valuation for property tax purposes, and $382.80 greater than the 1990 valuation for property tax purposes).

On June 8, 1995, Elsie, through Frank, Jr., by virtue of his durable power of attorney, made application for Medicaid benefits. This application was denied on July 27, 1995, due to an improper transfer of resources (*i.e.*, the transfer of Elsie's home to Frank, Jr.).

On July 26, 1996, Elsie, through Frank, Jr., by virtue of his power of attorney, again made application for Medicaid benefits.

Elsie died during the pendency of the administrative process on November 23, 1996.

Following oral hearings on the application matter, the Department of Human Services (hearing officer M.C. Kilbane) issued its appeal ruling on July 3, 1997, overruling the Santa appeal in part with respect to the improper transfer of resources, and sustaining the appeal in part with respect to having the agency determine countable resources in certain bank accounts to establish whether Medicaid eligibility exists based on resource limitations. This ruling regarding the improper transfer of resources was administratively appealed by the Santas' counsel for "Elsie Santa (now deceased) and her son, Frank Santa," on July 18, 1997.

On August 19, 1997, the agency affirmed the ruling of Hearing Officer Kilbane.

---

1. The conveyance fee was $4.00 per $1,000 of value.

2. The record reflects that the property in question had a property tax valuation of $46,882.80 in 1990, and $51,385 in 1994.

On September 16, 1997, an appeal of the August 19, 1997 ruling was filed in common pleas court pursuant to R.C. 119.01, *et seq.*[3] In the case caption, the plaintiffs in the action were Elsie Santa and Frank Santa, with both listing 6200 Stanbury Road, Parma, Ohio, (the address of Frank, Jr.) as their address. Paragraph 1 of the common pleas court notice of appeal stated: "Now come the Plaintiff–Appellants, Elsie Santa, and her son and power of attorney Plaintiff Frank Santa, and hereby give notice of their appeal from the August 19, 1997, decision, * * *." The estate of Elsie Santa was not substituted as a party at any point in the proceedings before the administrative agency or the trial court.

Subsequent to briefing, the trial court, using a half-sheet status form entry without opinion, affirmed the August 19, 1997 decision of the administrative agency, finding that the ruling was "supported by reliable, probative [and] substantial evidence." The notice of appeal from this final order was filed on June 15, 1998, by plaintiffs-appellants.

One assignment of error is presented for review.

I

"The trial court erred by ruling that the administrative ruling of the Ohio Department of Humans (*sic*) Services was supported by reliable, probative and substantive evidence."

■ Prior to addressing the merits of the assignment of error, the court will explore whether Frank, Jr. was a real party in interest with requisite standing to maintain the action. We conclude that he was not a real party in interest.

■ The substantive claim for relief presented by the Santas was that Elsie was eligible for Medicaid benefits. This claim was properly advanced by the then-living Elsie through her attorney-in-fact Frank, Jr., by virtue of the durable power of attorney. However, upon the death of Elsie on November 23, 1996, the durable power of attorney given to Frank, Jr., lapsed. At that point, Frank, Jr. had no legal authority to act on behalf of his deceased mother's interests (*i.e.*, application for Medicaid benefits), which survived her death. Despite advising the administrative agency on July 18, 1997, of the fact that Elsie was now deceased, the benefits proceedings continued despite the absence of the real party in interest, to-wit, the estate of Elsie Santa.

---

**3.** On the case designation form attached to the appeal, counsel for appellants identified one related case, namely, *Broadview Nursing Home v. Santa et al.*, Cuyahoga County Common Pleas Court Case No. CV–305502. This is, apparently, the attempt by the long-term-care facility to obtain payment for its services rendered to Elsie, which services were guaranteed for payment by Frank Santa, Jr.; the case was filed in April 1996 against Elsie and Frank Santa, Jr. According to the analysis section of the final order appealed from by appellants, Case No. CV–305502 settled.

Subsequent to the filing of the notice of appeal to the common pleas court pursuant to R.C. 5101.35(E),[4] the administrative agency, on October 3, 1997, filed the administrative record with the trial court. Within that record was a copy of the July 18, 1997 appeal filing by the Santas that disclosed the decedent status of Elsie to the trial court. Having filed in common pleas court, the parties were necessarily bound by the rules of civil procedure and statutory mandates observed by that venue.

Civ.R. 17(A) states:

"(A) Real party in interest. *Every action shall be prosecuted in the name of the real party in interest.* An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his name as such representative without joining with him the party for whose benefit the action is brought." (Emphasis added.)

Applying R.C. 119.01(G) to this case, we are faced with the question of whether Frank, Jr., is a party? We conclude that he is not a party because his interests (*i.e.*, his personal liability for nursing home services performed for his mother, which is separate and distinct from his mother's interest in obtaining Medicaid benefits) were not the subject of the adjudication by the Department of Human Services. The fact that he may have guaranteed payment for services rendered by his mother's nursing home was not adjudicated in any way by the agency. Instead, it was Elsie's interests that were the subject of the adjudication by the agency.

Appellants rely upon *Richardson v. Ohio Dept. of Human Serv.* (May 23, 1991), Franklin App. No. 91AP–148, unreported, 1991 WL 96346, for the proposition that a person other than the beneficiary may maintain an administrative appeal pursuant to R.C. 119.12. This proposition is unpersuasive because this proposition was not the holding of *Richardson;* in fact, the *Richardson* court did not address the issue. In *Richardson,* it was determined that a Cuyahoga County nursing home who, on behalf of the decedent-resident-beneficiary, had sought Medicaid reimbursement was a "person" as that term is defined pursuant to R.C. 119.01(F).[5] The *Richardson* court determined solely that the administrative

---

4. R.C. 5101.35(E) mandates that appeals to common pleas court pursuant to that section "shall be governed by section 119.12 of the Ohio Revised Code * * *." R.C. 119.12 permits "[A]ny *party* adversely affected by an order of an agency" to file an appeal with common pleas court. R.C. 119.01(G) defines "party" as "the person whose interests are the subject of an adjudication by an agency."

5. R.C. 119.01(F) defines "person" for purposes of that section as "a person, firm, corporation, association, or partnership."

appeal by the nursing home should have been filed in Cuyahoga County, and expressly stated, at footnote 1 therein, that the court did not address the issue of whether the nursing home, and not the decedent's estate,[6] should or could maintain the action.

In *Dawson, supra,* this court stated:

"An executor may ordinarily prosecute in his representative capacity any cause which his decedent could have instituted. *Oncu v. Bell* (1976), 49 Ohio App.2d 109, 3 O.O.3d 175, 359 N.E.2d 712. *The executor of an estate, as a legal representative, settles the decedent's affairs and 'stands in [the decedent's] shoes' as far as entitlement to benefits is concerned.* See *Hopper v. Nicholas* (1922), 106 Ohio St. 292, 302, 140 N.E. 186, 189; *Service Transport Co. v. Matyas* (App.1952), 63 Ohio Law Abs. 236, 108 N.E.2d 741, reversed on other grounds (1953), 159 Ohio St. 300, 50 O.O. 298, 112 N.E.2d 20." (Emphasis added.)

■ Since the representative of Elsie's estate, and not Frank, Jr., in his individual capacity or as a lapsed attorney-in-fact, was the real party in interest to prosecute the action in the trial court, the trial court did not have jurisdiction to entertain the administrative appeal. Accordingly, the judgment of the trial court is reversed.[7]

Assuming that the appeal to the trial court had been prosecuted in the name of the real party in interest (the estate of the decedent), our review of the record would conclude that the decision of the trial court was supported by reliable, probative and substantial evidence.

The standard of review for an administrative appeal taken pursuant to R.C. 119.12 was stated by this court in *Jaffal Food Market, Inc. v. Ohio Liquor Control Comm.* (Oct. 1, 1998), Cuyahoga App. No. 74449, unreported, 1998 WL 686473, at 1–2:

"The Supreme Court recently set forth the scope of the trial court's review as follows in *VFW Post 8586 v. Liquor Control Comm.* (1998), 83 Ohio St.3d 79, 81–82, 697 N.E.2d 655:

---

6. In *Dawson v. Ohio Dept. of Human Serv.* (1990), 68 Ohio App.3d 262, 588 N.E.2d 217, this court reversed the dismissal by the trial court of the administrative appeal reviewing his denial of Medicaid assistance, and determined, contrary to the trial court, that the executrix of Dawson's estate qualified as a "person," "party" and "appellant" as those terms are used in R.C. 5101.35(E) and 119.12.

7. The court notes that, at this late date, an appeal to the common pleas court by the estate of the decedent would be barred as untimely. An appeal of an agency decision pursuant to R.C. 5101.35 must be filed with the common pleas court within 30 days after the Department of Human Services mails the administrative decision to the appellant, but in no event shall that filing time period be extended for good cause beyond 6 months from the date the Department mails the administrative decision. See R.C. 5101.35(E)(3).

" 'In reviewing the commission's order pursuant to an R.C. 119.12 appeal, a common pleas court is required to affirm if the commission's order is supported by "reliable, probative, and substantial evidence and is in accordance with law." In connection with this standard of review, this court has stated that "an agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest on improper inferences, or are otherwise unsupportable." *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 471, 613 N.E.2d 591, 595. With respect to purely legal questions, however, the court is to exercise independent judgment. *Id.* at 471, 613 N.E.2d at 595–596.'

"Under this standard, the trial court is required to do a limited weighing of the evidence to determine whether or not the decision of the Commission is supported by substantial, reliable and probative evidence. However, our review of the trial court's decision is much more limited. This Court's review was addressed by the Ohio Supreme Court in *Lorain City [School Dist.] Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 533 N.E.2d 264, where the Court stated:

" 'In reviewing an order of an administrative agency, *an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. An abuse of discretion " * * * implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency."* State, ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster* (1986), 22 Ohio St.3d 191, 193, 22 OBR 275, 277, 489 N.E.2d 288, 290. Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. See *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685.' *Id.* at 260–261, 533 N.E.2d 264.

"Based on this authority, the trial court must examine the record to determine if there was some reliable, probative and substantial evidence present to support the Commission's order. If such evidence is present and absent an abuse of discretion, the appellate court may not substitute its judgment for that of the Commission." (Emphasis added.)

Applying our abuse of discretion review standard to the trial court decision, we note that the record on appeal contains no transcript of the oral testimony at the agency level. Thus, we are left with the following: (1) the written decisions of the administrative agency denying the application for benefits, which decisions contain findings of fact, legal analysis and conclusions of law,

(2) the copies of the relevant deeds, affidavits and durable power of attorney submitted at the agency level, and, (3) a modest amount of correspondence and notices normally found within an administrative record of this type. Based on this record, we cannot conclude that the trial court abused its discretion in affirming the agency decision. There was evidence that could suggest that the transfer of Elsie's home was done to reduce her countable resources within the limitations of Medicaid eligibility and was not a gift to her son in consideration for his services to her. This evidence includes the following: (1) the deed from Elsie to Frank, Jr. was not recorded for four years, several months prior to Elsie's June 1995 application for Medicaid, (2) on the day Frank, Jr., recorded the deed from his mother, he immediately sold the property to his mother-in-law for an amount below fair-market value, (3) the proceeds of the sale of the property to the mother-in-law were retained by Frank, Jr., (and his wife) and not with Elsie.

Appellants make the subargument within this assignment that alleged due process procedural errors at the administrative level (relating to: delays in conducting hearings, delays in releasing decisions denying the application for benefits, and, the required elements of the denial notice) merit a determination that Elsie's application for Medicaid benefits should have been approved. Despite the presence of irregularities in the procedural history at the administrative level, the record supports the agency's contention that much of the delay in getting the case heard in a timely manner is attributable to: (1) plaintiffs' counsel's acts or omissions (such as, appellants' counsel appealing a notice of denial of Medicare, rather than Medicaid, benefits on August 11, 1995, at the county level, or by acquiescing in the delay by not contacting the ODHS to complain about the delay in receiving a hearing on the denial of benefits), or, (2) the county human services department (which should have notified the ODHS of the August 11, 1995 hearing request by the Santas, but failed to do so causing the case to "fall through the cracks" of the system for a considerable period of time). In spite of these procedural irregularities, the fact remains that hearings were conducted, and the Santas presented evidence and testimony at these administrative hearings to determine the eligibility of Elsie to receive Medicaid Benefits. It was not demonstrated that these administrative procedural errors had any impact on the substantive decision by either the administrative level in denying Elsie's application for benefits, or the trial court in affirming that denial.

This cause is reversed for lack of jurisdiction and judgment entered in favor of defendant-appellee ODHS.

*Judgment reversed.*

PATTON, P.J., and PORTER, J., concur.